I'll call the last case on the calendar. Chavez v. Dole. It's more than that, but just to be brief. Mr. Massey. Good morning, and may it please the court. My name is Jonathan Massey. I appear on behalf of the plaintiff's appellants, and with the court's permission, I'd like to reserve three minutes for rebuttal. Thank you very much. This case presents the question of whether the district court erred in dismissing six actions under the first filed rule because the plaintiffs involved had filed substantially identical claims in Louisiana a year prior. Our position is that the legal doctrine of res judicata, or preclusion, is the appropriate legal framework for resolving this case, not the first filed rule, because the cases eventually were dismissed by the Louisiana court. In that statement, you're saying the district court got it wrong? Yes, we believe the district court got it wrong. The district court orders do not contain an examination of res judicata or claim preclusion. We think you could either remand and send it back for the district court to do that work, or this court could decide the legal question of whether there was res judicata. I'm sorry. The court got it wrong because? Because the first filed rule didn't apply to cases which were not simultaneously pending. Just to be clear, the very first order issued by the district court did occur at a time when the Louisiana cases were still pending. Subsequent, that was in August of 2012. In September, the Louisiana cases were dismissed, and then there were three more additional orders. This case has six consolidated actions. So the very first order did issue when there was a pending case in Delaware and in Louisiana, but that was not a final order. It didn't resolve all claims against all parties. Where are we supposed to look for the rule that says that these materially identical actions have to be in time and space proceeding at exactly the same time? Isn't the law supportive of the notion that they have to be materially identical at a point in time, and if that is so, then you may apply the first filed rule? Well, the governing case is the EEOC decision by this court in 1988, and it applied what we call the flexible rule of judicial administration rather than any categorical approach. No court, to our knowledge, certainly not this court, but you can't find any court that has said we will apply the first filed rule in a way where the second action would have been permissible as a matter of res judicata. This is an admittedly unusual case because of the timing, but it would be bizarre and anomalous, we think, to apply the first filed rule, which is sort of a rule of comedy. But you say res judicata applies? We think res judicata would be the right legal framework. That's the way to approach the problem. It doesn't bar the second action. Put aside res judicata for a moment. Okay. Let's just assume. A moment that we disagree. Okay. It doesn't matter whether we do or not. I'm trying to understand the framework under which you're applying the first filed rule. Right. Because there is a point in time when they obviously are both outstanding litigations. Right. We have the same set of plaintiffs and the same set of defendants. I don't need to go through all the rest. Right. So how long do they have to be existing in equipoise for you to apply the first filed rule? I would imagine that one's filed in 11, one's filed in 12. For every day that they overlap, they are technically subject to the application of the first filed rule. What happens that takes it out of that realm? Well, it was when the orders were issued. When the district court resolves the motion to dismiss, there were no pending cases. There were not simultaneously pending cases. There were times when they were, weren't there? Well, as I said at the beginning, for the very first court. The same person in Delaware and the same case? Right. Only for the very first order that the district court in this case issued. Then it issued three more orders. It may be for a very brief time, but there was a time when there were cases in two district courts at the same time. Yes, but. But we're in jurisdiction. That's right. Well, of course. More to Judge Reno's point is, weren't those cases appropriate for dismissal? Or dismissal under the first filed rule? Well, we think not. In EEOC, for example, the cases were simultaneously pending the whole time. And there was a tremendous risk of duplication and inconsistent judgments, as this court observed. You know, that case was a case where the University of Pennsylvania filed a suit in the District of Columbia, District Court, saying that a statute was unconstitutional. Then EEOC came to the Eastern District here and filed a subpoena action, an enforcement action under that statute. It was an anticipatory filing case? Pardon me? Was that an anticipatory filing case? Well, no. Well, this court said that the University of Pennsylvania sort of was acting anticipatorily. But what it said was that the first file rule didn't apply. Even though there were anticipatory filings, even though there was overlapping every day, the cases were in both courts, this court said you can't take a rigid mechanical approach. You have to say, what's the sensible result for judicial administration? Well, the sensible result for judicial administration, when the same parties are in the same thing making the same claims, why isn't it the first file rule? But once the Eastern District of Louisiana dismissed the cases, there was no overlap. Well, that's a different cutoff point, I think. Well, it is a different cutoff point. But it also reflects, for example, the District Court in Delaware could simply have stayed the cases while the Louisiana action was pending and then decided what to do. There would have been no cost to the parties, no cost to the court. Again, that seems to me different. The court would say the first file rule applies, but I'm not going to dismiss your case. That's different from what you're saying. Well, that's just a remedy. I don't mean to abandon that point. I share the concern that, frankly, that the District Court below did not apply the first file rule correctly because it should have simply stayed. But for some cases, it seems to me there was concurrent jurisdiction. One, the cases were filed first in Louisiana, and it would seem to me that the first file rule applies. Now, what I'm going to decide on the basis of that is a different matter. Well, that's another way of putting it. That's probably a better way than I was putting it. But you're telling Judge Reno it didn't apply. Well, we think, frankly, there was a category mistake. I think this is a square peg round hole problem because race judicata was a simpler way of looking at it in our view. And, frankly, it seems anomalous to say. Time goes by very quickly. Yes. I understand that first filing, and I understand those were dismissed because of concurrent Louisiana jurisdiction. Correct. You're saying they shouldn't have been dismissed. Correct. Stay or? Stay. Or the way the, for example, the District Court said, oh, yes. But there's another batch of cases that came after that, right? Correct. Not necessarily filing, but that were decided. Correct. After Louisiana filed its decision dismissing for prescription effects. Correct. Now the court takes those cases, right? Correct. And dismisses those under the first file rule also. Correct. Now what's your argument? Our argument is. Now those cases, I understand that the Louisiana decision was appealed to the Fifth Circuit. Correct. Could those cases be dismissed under the first file rule? Well, we think not under EEOC, certainly. We think that, again, race judicata wouldn't have barred them. So the first filed rule shouldn't have barred them. That given the importance of Delaware as a forum, the defendants' contacts with Delaware, I mean, nine of the defendants are Delaware companies. A lot of the activities occurred here. All of those reasons would have been good reasons under EEOC to say, yes, the Delaware action should have been permitted to proceed. So you could either say it. I think Your Honor put it a better way, that if the first file rule applied, it was error for the district court to dismiss the cases, particularly after the Louisiana cases had been dismissed. Do you have a first file rule situation when the Louisiana district court made its decision regarding statute of limitations? Do we have a first file situation at that point? No. In other words, it dismissed the cases. It dismissed the cases. It entered a final judgment in Louisiana, and then the appeal went. So at that point, the Delaware judge dismissed the cases under the first file rule. Correct. And that seems to us to be error. Error because? Because the first file rule didn't apply, shouldn't have been applied at all in that current context. There were not overlapping actions. The Louisiana cases were gone. There was an appeal pending. Okay. And if he had wanted to, he could have stayed. He could have said, we'd like to see how the appeal goes, so I'll stay these cases as a matter of sound judicial administration. We wouldn't have objected to that. That would have been fine. And then see what happens to the appeal. If the appeal is successful and the Louisiana cases continue, then I might continue to hold my Delaware cases in advance. Of course, all of that makes perfect sense. We're just complaining that it was the death now of the Delaware litigation when it wouldn't, once the Louisiana cases were dismissed. Okay, so just a quick yes or no will help me. So your understanding of the first file rule in a situation like this would be it would only have applied if at the time that someone moved for it in Delaware, the Louisiana case was still outstanding. Correct. Okay. And that was the first group of cases. How many cases are involved in that category? Well, it's six complaints. I believe the first cases were three district court docket numbers. But, again, that wasn't a final order, and so we moved for reconsideration of that. We pointed out to the court what had happened, apprised them of what happened in Louisiana. So we think the sensible thing to do would have been to vacate that first order, because if it had been a final judgment, that's one thing. It wasn't. It was an interlocutory order. Why don't you lose on race judicata? We don't because the traditional rule, as we cite, Semtec, Wright and Miller, Moores, has always been that a dismissal in State A on limitations grounds does not bar a subsequent action in another state with a longer limitations period. They obviously read Semtec differently. Pardon me. Well, our friends on the other side have a different view. They say Louisiana law governs, but they can't cite a single Louisiana case involving that context. All the cases they cite, except for Thompson Trucking, which I can discuss separately, but all the rest of their cases involve a plaintiff who sues under the same law twice, the same limitation statute twice. So a couple of their cases are legal malpractice actions in Louisiana. The plaintiff brings one, loses it, wants to bring a second. That's barred, just as we would be barred if we went back to Louisiana. As a practical matter, what if we took all of these cases and adopted your argument and sent all these cases back to Judge Andrews in Delaware? Yes. What is Judge Andrews going to do with those cases in light of the Louisiana statute of limitations? Well, he's going to decide the race judicata question, which we think we're right on. We think that they're not barred because the Louisiana court simply decided they were barred under the Louisiana prescription statute, not that they were barred under the Delaware statute of limitations. But that's not binding on all of those cases that were originally filed in Louisiana? No. All the Louisiana court held was that the Louisiana prescription statute barred the claim, not that they weren't barred under Delaware law. But you all, you're the same plaintiffs. You chose to go to Louisiana first. That would seem to be a fix that you put yourselves in. Well, Your Honor, the briefs discuss this at length. We did suffer a 17-year delay when we were stuck in federal court without federal subject matter jurisdiction. The case went up to the Supreme Court, has been removed multiple times by the defendants. There was a tough call to decide where to file. The defendants have contacts in many forums. We filed first in Louisiana. Then when the Louisiana Supreme Court granted review in a couple of class action cases called Duckworth and Quinn, there was a decision that had to be made about whether to seek a backup because the plaintiffs needed a forum to have their claims heard that had been basically, as the Delaware Supreme Court has found, had been sterilized or neutered by the defense forum shopping for those two decades. So I admit that was a tough call to make. But again, I think under EEOC, the rule has always been do what makes sense from a judicial administration standpoint. Hold things in abeyance when you can. Dismissal is an extreme remedy, and here it killed the claims. Thank you, Mr. Massey. We'll get you back on rebuttal. Mr. Halligan. I'm sorry, Ms. Halligan. Thank you, Judge Fuentes. Caitlin Halligan for the defendants. Judge Fuentes, I'd like to start by answering the question that you asked, which is what happens if you were to send this case back? First of all, in order to do that, you would have to overrule Judge Andrews and conclude that his dismissal of this case on first file grounds was an abuse of discretion. I believe in doing so you would be the only circuit court to ever have reversed a district court on those grounds. It's a very broad degree of discretion that a district court is given in those circumstances where the claims and the parties are identical to a first file case, which is exactly what we have here. As a practical matter, I think what would happen if for some reason you declined not to rule in our favor on race judicata grounds would be that it would be dismissed on race judicata grounds, and if not, other claims pending before Judge Andrews have been dismissed about a month ago on statute of limitations grounds, and presumably the same conclusion would apply there. One of the briefs cited to a non-presidential opinion, which we don't generally give too much weight to, but this one might be useful in terms of an example that it presents, and that was Judge Salas' decision in the case of Worthington v. Bayer. I don't know if you're familiar with it. Yes, yes, I am. It's non-presidential, but what I wanted to point out was her disposition of cases which argued the first file rule. Her disposition was interesting because what she did was she dismissed cases with the right to have those cases reopened were they to remain dismissed in the other forum, and also she transferred cases, also again giving the plaintiffs there the right to reopen those cases if those cases were completed at the forum to which they were sent. So when you say that we would be reversing the district judge here, he had apparently other options to exercise which he did not. The district court could have, as any district court judge is entitled to do, either stay the actions that were in front of him or dismiss them, and that's the same choice the judge faced in the Worthington case that you're describing. He was well within his discretion, and in fact, the only sensible result was to do exactly what he did, which was to dismiss them. Here's why. It was very clear that what the plaintiffs did here, what the appellants did here, was to forum shop. When they filed the cases in the Delaware District Court, they wrote a letter to the judge in the Eastern District of Louisiana. It's reprinted at page A216 of the appendix, and what the plaintiffs said to the district court judge was that they wanted to keep two forums open simultaneously to see in which one they fared better. That is precisely part of what the first filed rule was intended to preclude. What they said to the Louisiana District Court was that if the Louisiana Supreme Court ruled in their favor on this prescription, the statute of limitations issue, then plaintiffs would elect to proceed in Louisiana because the prescription issue would have been conclusively determined. But if this court, meaning the Eastern District of Louisiana, and the Louisiana Supreme Court determined that the cases are in fact prescribed, then plaintiffs can continue to pursue the merits of their claims in Delaware. Plaintiffs could have filed in Delaware and requested that the action be stayed, and the defendants might have opposed that, but they did not do that. Instead, they attempted to avail themselves simultaneously of both fora, and so it would have rewarded them for forum shopping to do what you're suggesting, and so Judge Andrews was well within his discretion to have instead dismissed the cases. He was very clear after looking at all of the factors that the circumstance that plaintiffs were in was of their own making, it was a function of their choices to file in multiple fora, and therefore dismissal was appropriate. What's your view of your adversary's definition of the first filed rule? Specifically, I'm talking about the notion that there is no consequence when two actions stand in equipoise on day one. It's whether on whatever day it is that you make the motion in the second action, the first action is also still outstanding at that time. We disagree strongly, and the doctrine supports us, and I'd like to explain why. You asked Judge Greenaway how long is it that the first filed rule is available, and in our view it's available as long as the other side, here the plaintiffs, continue to purposefully avail themselves of the form in which the first filed action is present. That was, as a technical matter, through the pendency of the period for filing of the cert petition in Louisiana case. So if they voluntarily dismissed the Louisiana action before there was any determination by that court, they'd be fine. Prior to Judge Barbier's decision, that is correct, because, well, had it been dismissed prior to the making of a first filed motion, then it would be correct. I think we'd have some argument that if we had made a motion and it then was dismissed that there might still be some application, because, of course, it is an equitable doctrine, as this court has held in EEOC. I'd like to also touch on EEOC because the plaintiffs rely on it so heavily. That's a case that cuts very strongly in the defendant's favor here. What the court said there, in addition to laying out the parameters of the doctrine, which it had first done in Crosley a couple of decades earlier, was, first of all, that exceptions to the first filed rule should be rare. It did acknowledge that there could be some circumstances, though, where the first filed rule might not be applied and where a district court judge would have leeway. Those circumstances weigh in favor of application here, because what this court did in EEOC was to look at what was basically form shopping by a plaintiff. The plaintiff filed an action to head off an imminent enforcement action in another jurisdiction in order to take available of what it believed to be more favorable case law in the District of Columbia, knowing that there was bad precedent in this circuit. The court said the district court is within its discretion to decline to apply the rule and to allow both cases to proceed simultaneously. That kind of conduct is exactly what plaintiffs have engaged in here, and defendants here too should. Well, the one you just described sounded like anticipatory filing. It sounds like it. Which is not, it seems to me, what happened in this case. It's not what happened in this case in terms of the specific procedural tactic, but it's exactly the same with respect to the exception. I can see it in that case, though. There is anticipatory filings in somebody simply looking for a better jurisdiction. But here what plaintiffs did was to file two cases. I would argue this is more egregious, because here you have plaintiffs, not plaintiffs and defendants, filing two actions simultaneously and being very explicit that what they want is to have two federal district courts consider these cases simultaneously.  Do you take the position that the first-file rule applies in cases where there's concurrent jurisdiction in different district courts? Absolutely, and I think that this Court's decision in EEOC as well as Crosley v. Hazeltine are very clear on that. Now, would that be the case then that when the Louisiana district court finished the case and dismissed those cases on prescription grounds that there was no longer concurrent jurisdiction with Delaware? Here's why it's permissible to apply the first-file rule even when the case is up on appeal. It serves the exact same purposes that dismissal while it's pending in two simultaneous district courts does. But that's not the case, though. The cases are not pending in two different district courts. They're pending in two different federal forums at the same time. The risk of waste is equally at play. Where they were to have prevailed before the Fifth Circuit would have been back before Judge Barbier. But you're suggesting then that when you consider the first-file rule, the appellate court, which is not a concurrent court, should be considered. I think that it's within the equitable parameters of the rule, particularly given the conduct that was going on here. It's also the case the plaintiffs have suggested that in – I'm sorry. I beg your pardon. I'm going to interrupt you because I don't understand something that you just said. Yes. When Judge Fuentes said, can an appellate court satisfy the concurrent jurisdiction, you breezed over that quickly. I'd just like you to spend a little more time on it. So your position is that it's really just a federal forum and not the stage of the litigation so that you could have one action in the district court, the other action in the appellate court, and vice versa, and that would make no difference in your first-filed analysis? Well, first of all, I think that because it's an equitable doctrine, it makes sense to do what courts have done, for example, in EEOC, which is to look at the circumstances of the particular case. And here, with respect to the first motion that was filed, there is no question but that that was filed prior to Judge Barbier's decision. So these arguments are irrelevant as to that first motion and the dismissal attendant to that motion. With regard to the second two motions that were filed, the same purposes that the doctrine serves when it was pending before Judge Barbier were equally at play. There was duplicative litigation that was still going on. Plaintiffs were actively availing themselves of that forum. Plaintiffs suggested instead race judicata should have been available. In a case that the appellants themselves cite, five unlabeled boxes, the court explains why it is that attaching race judicata effect to a decision while it is on appeal is a risky proposition, because if it is reversed, then there is a lot of procedural upset that will result. So it was actually more appropriate for Judge Andrews to have decided this on first-filed grounds in that window than it would have been to have turned to race judicata. Race judicata could have supported the decision and certainly would have now, but in that window, the first-filed rule was a less intrusive doctrine to have applied. Could you flesh that out a little bit more, why race judicata would apply now? How would it apply? You're talking about the Louisiana decision regarding the one-year statute limitations? Yes. So, of course, race judicata requires three elements, right? A final judgment on the merits in a prior suit, the same parties or their privies, and the subsequent action that's based on the same cause of action. There's no question here that we have identical claims and identical parties. So the only question that would have to be answered to dismiss this case on race judicata grounds is whether or not Judge Barbier's decision and the Fifth Circuit's affirmance is a final judgment for purposes of race judicata. Semtec is crystal clear. Why would Judge Andrews in Delaware apply the ruling of the Louisiana District Court regarding statute of limitations? Because of Semtec. Semtec provides the framework for looking at what preclusive effect you give to a district court judgment where the district court is sitting in diversity. Semtec says very plainly that you look to the rules where the federal court sits to determine the preclusive effect of a judgment when it's entered in diversity. So if you look here to determine the preclusive effect of Judge Barbier's decision sitting in the eastern district of Louisiana, you look to the rules of the state where that court sits, which is Louisiana. Under Louisiana's rules, as we lay out in our brief, Louisiana actually has decided to track the federal rules, and we cite authority for that out of the Fifth Circuit and Louisiana. In turn, if you look at the federal rules, Ploutt v. Spendthrift says that race judicata does attach to a decision on statute of limitations. So that's the logic that leads you to the very clear result that race judicata effect should be accorded Judge Andrews' decisions. What plaintiffs do is they refer to the traditional rule. Could Judge Andrews have applied Delaware law regarding statute of limitations? No, he could not have under Semtec because Semtec instructed him in determining the preclusive effect of that decision in Louisiana to look to the Louisiana rules governing what the preclusive effect should be. Those rules are very clear. Federal, they look to the federal standard. The federal standard is it's a matter to which race judicata effect attaches. But Judge Andrews has not made any decision regarding race judicata, has he? He has not. He decided the case on first-file grounds. And I believe that in order for you to reach the race judicata question, you would have to conclude that he abused his discretion in dismissing those cases on first-file grounds. If we were to reach that issue? If you were to reach that, we would strongly encourage you to decide it. It's a question of law. The law is clearly teed up in the briefs, and we believe that the answer is very straightforward. If I could just briefly touch on the traditional rule that the plaintiffs rely on in attempting to escape the race judicata effect of Judge Andrews' decision. Again, Semtec is very clear. Semtec discusses the traditional rule, which is also reflected in some of the treatises that the plaintiffs cite, Moore's, Wright and Miller, the restatement. What Semtec does is to discuss that in the context of explaining the rule that it is discarding. At page 504 of the decision, it says the traditional rule is something that has led to forum shopping because you can have different rules in the federal and the state courts. It says we are not going to follow this effort to follow the traditional rule under Federal Rule of Procedure 41. Instead, we are adopting the position that you simply look to the rules of the state where the federal diversity court sits. So these references to the traditional rule are completely irrelevant on the face of Semtec itself. Ms. Halligan, thank you very much. Thank you. Mr. Capone. Good morning. May it please the Court, Steve Capone speaking on behalf of Chiquita Brands International, Inc. In addition to the arguments raised by my colleague, which I support, my client, Chiquita Brands International, Inc., was properly dismissed for lack of personal jurisdiction. The reasons we believe Judge Andrews is correct in reaching that conclusion are in our papers, with one exception, the Daimler AG v. Baumann case issued by the Supreme Court earlier this year, which the Court clarified the sort of contours of general jurisdiction. That decision was not raised in our papers because it was issued only a few days before we filed our brief. However, I just wanted to speak today to point out to the Court we believe that decision supports the arguments in our brief and the conclusion reached by Judge Andrews. What was the rationale for the dismissal, again, that Chiquita Brands is not in Delaware continuously or doing business in Delaware? Correct. There are a number of Chiquita entities. This particular entity, Chiquita Brands International, Inc., was an Ohio corporation, now North Carolina, never a Delaware corporation, and never had a principal place of business or conducted any systematic or continuous activities in Delaware that would cause someone to conclude it should be deemed at home and therefore subject to general jurisdiction, which was the only – Does it matter if it does business here via subsidiaries or other entities? There was – this entity did have a subsidiary that conducted business in Delaware, but there was no allegation or assertion that the subsidiary or somehow the corporate formalities were ignored, that there was a piercing to corporate bail fact pattern present in this case. Thank you, Mr. Capone. Thank you. Thank you, sir. Mr. Massey. Thank you, Your Honor. With respect to personal jurisdiction, we'll rest on what's in the briefs on that. With respect to the first filed issue, I'd just like to point out that when the district court decided the motion in – the motions in March 2013, May, and September 2013, there was no concurrent jurisdiction with Louisiana because Louisiana actions had been dismissed, and that's in the record at 8A, 810, and 813. With respect to the notion that the plaintiffs were purposely availing themselves of Delaware and trying to two-time the courts, I think the letter in the record, which is at page A216 and A217, is very clear that we were being open and honest with the courts in explaining why the strategic choices were being made and not hiding anything. It's also very clear – You informed the court that you had other actions similar, identical actions pending in Louisiana? Yes. Oh, the Delaware court. Well, this letter was written to the Louisiana court, and then in Delaware, those actions were – nothing happened in those actions until the defendants moved to dismiss. There's been no discovery in Delaware, no proceedings of substance before Judge Andrews on any issue. The first thing that happened out of the box was the defendants moved to dismiss on the first filed doctrine. So there's not been any proceedings of substance. We would have had no objection to a stay.  not a stay issued, I'm sorry. We requested a stay because a similar case had gone to the Delaware Supreme Court, the Blanco case on the issue of Delaware, the Delaware statute of limitations. And so it's too much to accuse us of trying to – of manipulating the courts. There was none of that. We were open and honest, and Judge Andrews expended no resources in this case, frankly, until he ruled on the motions, the first filed motions. I would like to just address Semtec for a minute because our opponents accuse us of misstating that case. What Semtec says is a traditional rule is a dismissal on limitations in State A does not bar an action in State B with a longer limitations period. And what it says is that's the rule followed in the restatement and in Wright and Miller and everything else. The – of course, states are free to make their own choices. The defendants say that Louisiana law governs this case. Louisiana has – follows the restatement. That's what the Lafreniere case, which is a Fifth Circuit 2000 case, that's in our reply brief at page 20, I believe. It says courts should look to the restatement to decide what Louisiana does on limitations. And so – on res judicata, I'm sorry. So the Louisiana approach should be the restatement approach, which should be the traditional rule. We think the defendants – if the defendants essentially have the burden. How does that work, though? The statute is one year. Yes. Delaware judge knew it was one year. How would that help you? It's not one year. In Delaware, it's two years. Oh, sorry. No, no. Maybe I misspoke. I'm sorry. Louisiana, it's one year. Correct. Delaware, it's two years. Correct. How does that help you? Well, the defendants have not – haven't briefed it, but the issue is there is class action tolling because this case was the Texas court, state court, denied certification in June 2010. These cases were filed in June 2012, within two years. Your argument is that you're not subject to the Louisiana statute of limitations. Correct. The res judicata, therefore, does not dispose of your cases. Correct. Correct. And we think that the true – Delaware would follow – I'm sorry. Louisiana would follow the traditional rule. The defendants have the burden. They're the moving parties. If they want to assert an affirmative defense of limitations, they have to prove it's actually barred. Thank you, Your Honor. Thank you very much. Thank you. A very good argument. It's a very difficult case, and we will take it under advisement. Thank you very much, and we will recess.